## UNITED STATES BANKRUPTCY COURT
### FOR THE
### WESTERN DISTRICT OF KENTUCKY

IN RE:                                       )
                                             )
BULLITT UTILITIES, INC.          )        CASE NO.  15-34000(1)(7)
                                             )
_____Debtor_____)

## MEMORANDUM-OPINION

This matter is before the Court on the Motion of the Trustee, Robert W. Keats ("Trustee"), for Clarification Requested by the P.S.C.  The Court considered the Trustee's Motion, the Objection to the Trustee's Motion filed by Interested Party Bullitt County Sanitation District ("BCSD"), the Response to the Trustee's Motion filed by the Attorney General of the Commonwealth of Kentucky, the Trustee's Reply to the Objections to his Motion, as well as the comments of counsel for all parties at the hearing held on the matter before the Court.  For the following reasons, the Court will **GRANT** the Trustee's Motion as set forth in the accompanying Order.

## PROCEDURAL AND FACTUAL BACKGROUND

The Chapter 7 Trustee of the Bankruptcy Estate of Debtor Bullitt Utilities, Inc. ("Debtor") seeks an Order from this Court confirming that the claim for a surcharge asserted by the Debtor in Case No. 2014-00255 (hereinafter referred to as the "PSC Surcharge Case") before the Public Service Commission ("PSC"), is property of Debtor's bankruptcy estate, pursuant to 11 U.S.C. §§ 541 and 543 and as such, is a claim the Trustee is entitled to pursue on behalf of the Bankruptcy Estate.

Pre-petition, the Debtor  filed with the PSC the PSC Surcharge Case seeking its approval of a monthly surcharge, in addition to normal monthly service fees, to its customers.  The claims

behind the action for the surcharge before the PSC arose from bills accumulated by the Debtor when it was forced to hire contractors to help clean-up a catastrophic failure of Debtor's Hunters Hollow Wastewater Treatment Plant in 2014. The total cost of those specially contracted remediation services exceeded $3,400,000.

In addition to the services rendered relating to the request for the surcharge before the PSC, the Debtor and BCSD entered into a written Agreement, dated November 10, 2014, whereby BCSD agreed to provide short-term emergency treatment for the wastewater generated at the facility until "a permanent solution to the failure of the Hunters Hollow WWTP can be implemented which is expected to be on or before December 31, 2016." *See* Exhibit E to the Trustee's Motion for Clarification. The Agreement contains an Amendment dated May 15, 2016.

In the summer of 2015, the Debtor initiated Case No. 2015-00290 with the PSC to allow an abandonment of its facilities and end its operations at the Hunters Hollow plant pursuant to KRS 278.021 (hereinafter referred to as the "PSC Abandonment Case"). In that action, the PSC entered its findings authorizing the abandonment on August 31, 2015.

On September 1, 2015, the PSC initiated Case No. 15-CI-946 with the Franklin Circuit Court (hereinafter referred to as the "FCC Action") by filing a Complaint and a Motion to attach the assets of, and appoint a receiver for, the Debtor, a procedure required by KRS 278.021(1). On or about September 17, 2015, one of Debtor's largest Creditors, Veolia Water Technologies, Inc. ("Veolia") filed a Motion to Intervene in the FCC Action, a Motion which was opposed by the PSC. On September 24, 2015, the Court in the FCC Action entered an Order denying Veolia's Motion to Intervene.

On September 23, 2015, in the FCC Action, the Court entered an Order appointing BCSD as the Receiver for the Debtor. On October 6, 2015, in the FCC Action, the Debtor filed its Answer to the Complaint.

On October 16, 2015, in the PSC Abandonment Case, the PSC entered an Order indicating that BCSD should be substituted for Debtor in the PSC Surcharge Case and the Debtor was dismissed as a party to that action. An Order was entered the same date in the PSC Surcharge Case substituting BCSD for the Debtor and dismissing Debtor as a party to that action.

On December 9, 2015, in the PSC Surcharge Case, BCSD and the Kentucky Attorney General filed a Joint Motion to Dismiss the action originally initiated by the Debtor seeking approval of the surcharge. On December 11, 2015, Veolia filed an Objection to the Motion to Dismiss the PSC Surcharge Case, but the PSC refused to make the Objection part of the record on the grounds that Veolia was not a party to the proceeding. Veolia contends that the Joint Motion to Dismiss the PSC Surcharge Case was filed only after BCSD determined it could not benefit from the surcharge and it would later seek its own rate increase from Debtor's customers to generate proceeds for its own purposes. This was to effectively close out Petitioning Creditors' rights to seek payment of this claim.

On December 15, 2015, in the PSC Surcharge Case, the PSC entered an Order dismissing the proceeding, without prejudice.

On December 18, 2015, two of the Debtor's largest Creditors, Veolia and Purdue Environmental Contracting Company, Inc. ("PECCO") (hereinafter referred to jointly as the "Petitioning Creditors"), who provided remediation services to Debtor during the emergency event, filed an Involuntary Chapter 7 Petition against Debtor before this Court. The Petition was filed after

-3-

Veolia had requested and was denied party status in the PSC Surcharge Case, as well as being denied an opportunity to intervene in the FCC Action appointing BCSD as the receiver. Since BCSD had been substituted for the Debtor in the PSC Surcharge Case, the Petitioning Creditors had no recourse to assert claims other than before this Court.

On December 29, 2015, this Court entered an Order appointing the Chapter 7 Trustee Robert W. Keats (hereinafter "Trustee"). The Trustee sought an Order from this Court allowing him to request the PSC to reconsider the Order dismissing the PSC Surcharge Case. After this Court approved the Trustee's request, the Trustee proceeded before the PSC, but his motion was denied by the PSC. The PSC reasoned that the Debtor (thus the Trustee) had no standing to challenge the dismissal because it had not (1) timely sought a rehearing of the Franklin Circuit Court Order appointing BCSD as Receiver (thus providing it standing as the proper party in interest before the PSC), and (2) had not then timely challenged the PSC Order in the PSC Surcharge Case substituting the Receiver for the Debtor. The PSC further reasoned that without the Debtor or Trustee's timely actions to reinvest itself with "standing," the Trustee could not challenge the PSC dismissal of the PSC Surcharge Case. Additionally, the PSC stated that since the Debtor voluntarily abandoned its utility assets under Kentucky's statutory scheme in the PSC Abandonment Case, it lost its right to seek a surcharge prior to the filing of the Involuntary Petition.

The PSC also stated in its Order of April 14, 2016 that nothing prohibited the Trustee from requesting the Franklin Circuit Court to withdraw its September 23, 2015 Order appointing BCSD as the Receiver, which would return possession and control of the sewer assets to the Debtor, "including the right to seek a rate surcharge. Alternatively, nothing herein should be construed to prohibit the Trustee from seeking an Order from the Bankruptcy Court transferring possession and

-4-

control of these assets from BCSD, as Receiver, to the Trustee." *See* Exhibit A to Trustee's Motion, at 9-10.

The PSC's Order states that because of the appointment of the Trustee herein, it is unclear now whether the Receiver has any power to act with respect to the Hunters Hollow collection system, and that either this Court or the Franklin Circuit Court should fully describe the power of the Trustee and any limitations.

## **LEGAL ANALYSIS**

This Court is presented with the issue of which entity has legal title to the assets of Bullitt Utilities, an entity before this Court as a Debtor in an Involuntary Chapter 7 proceeding filed by several of its creditors. The parties also dispute which of three competing forums is appropriate to resolve the issue: the Kentucky Public Service Commission, the Franklin Circuit Court, or the United States Bankruptcy Court for the Western District of Kentucky.

The PSC, in its Order of April 14, 2016, acknowledges that it is caught in the middle of a dispute that can only be resolved by this Court or the Franklin Circuit Court. The PSC further urged the Trustee to seek clarification regarding the Trustee's authority regarding property of the Debtor's estate and BCSD's role as the Receiver and its authority to operate the business of the Debtor. The Petitioning Creditors, as well as the Trustee, look to this Court for resolution of the issue, while the Receiver and the Attorney General believe the matter is best resolved by the Franklin Circuit Court.

The Chapter 7 Involuntary Petition which initiated this case was filed on December 18, 2015 by the Petitioning Creditors. On the same date, the Petitioning Creditors filed an Emergency Motion to Appoint Trustee. The Court held an expedited hearing on that Motion on December 29, 2015,

after which the Court entered an Order granting the Motion and appointing a Trustee pursuant to 11 U.S.C. § 303(g) of the Bankruptcy Code.  That Order stated:

> The interim trustee shall promptly review the surcharge claim and the Surcharge Case[1], and then will make a determination regarding whether to reinstate the Surcharge Case, appeal the Surcharge Case or reassert the Surcharge Case.

The Court further stated it was retaining jurisdiction "over any and all matters arising from" the interpretation or implementation of that Order.  *See*, dkt #10.

The Court ordered the appointment of the Trustee, in accordance with 11 U.S.C. § 303(g), ". . . to preserve the property of the estate or to prevent loss to the estate . . . to take possession of the property of the estate and to operate any business of the debtor."  11 U.S.C. § 303(g).

On the date the Involuntary Petition was filed, this Court retained jurisdiction to determine which assets are property of the bankruptcy estate under 11 U.S.C. § 541.  This is a "core" matter under 28 U.S.C. § 157(b) which falls squarely within the jurisdiction of this Court.

BCSD is a "custodian" within the meaning of 11 U.S.C. § 101(11).  However, once a bankruptcy petition is filed, even after the appointment of a state court-appointed receiver is in place, the default position under the Bankruptcy Code is that a debtor is entitled to custody of its property, and 11 U.S.C. § 543[2] directs custodians of estate property to turnover such property to the Trustee.  The exception to this general rule is contained in 11 U.S.C. § 543(d)(1), which provides that where the interest of the creditors would be better served by the custodian continuing in

---

[1]The "Surcharge Case" refers to what the Court previously referred to as the "PSC Surcharge Case".

[2]BCSD contends the Trustee did not request turnover of the assets held by the Receiver under 11 U.S.C. § 543.  The Trustee's Motion indicates that it was brought pursuant to 11 U.S.C. §§ 541 and 543.  The Court, therefore, has the discretion to treat the Trustee's Motion as one for turnover under 11 U.S.C. § 543.

possession, custody or control of such property, then the court may allow the custodian to remain in control of the property. *See In re R & G Properties, Inc.*, No. 08-10876, 2008 WL 4966774 (Bankr. D. Vt. Nov. 21, 2008).

Having established the Trustee's authority and this Court's jurisdiction over the bankruptcy estate, the next issue is whether the Debtor's legal title to the assets of Bullitt Utilities was severed prior to the date the Involuntary Petition was filed. BCSD contends that the Debtor abandoned its title to all assets as part of the process before the PSC, as required by KRS 278.021, followed by the subsequent appointment of the Receiver by the Franklin Circuit Court and placement of the Debtor's assets under the sole control and responsibility of BCSD. *See* Franklin Circuit Court's Order of September 23, 2015.

The Court has not been presented with any clear binding legal authority that Bullitt Utilities, the Debtor herein, lost legal title to its assets or that legal title to those assets was severed by the PSC in the PSC Abandonment Case under KRS 278.021 or in the FCC Action, wherein BCSD was appointed as the Receiver. The PSC Abandonment Case is a regulatory procedure before the PSC. It quite obviously involves an operator's decision to give up operational control of a facility. Neither BCSD nor the Attorney General have provided this Court with legal authority wherein the PSC can divest an abandoning operator of title to its assets through an action such as the PSC Abandonment Case. Certainly, the PSC does not take title to the assets upon this abandonment, otherwise the FCC's authority would be unnecessary.

Indeed, upon entry of the Order of the PSC in the PSC Abandonment Case, the PSC became a party in interest when it filed the FCC Action to seek attachment of the Debtor's assets and appointment of a receiver as custodian of the assets for operation, pursuant to KRS 278.021(1). By

-7-

this state statute, the determination of these requests is made by a court of general jurisdiction, here the Franklin Circuit Court.

No one has argued that the Debtor voluntarily conveyed title of its assets to the PSC or BCSD. Absent a documented sale transaction, only the Franklin Circuit Court could sever BU's title to it's assets before the filing of the Bankruptcy Petition. Apparently no such order exists. While the PSC has clear regulatory and approval authority over operators of wastewater treatment plants like BU, it does not have the authority of a court of general jurisdiction to sever and pass title to a good faith purchaser. The Debtor's abandonment before the PSC could not sever its interests in its assets. Had that been permitted by Kentucky law, the Franklin Circuit Court would have no decision to make and pleas to its authority would be nullities. That is not the case here. Kentucky law requires the orders of the Franklin Circuit Court and envisions the PSC as a party in interest for the purposes of possession, control, and title to the operator's assets.

BCSD contends that once the FCC appointed it as Receiver, Bullitt Utilities' legal title was severed until either it or the Trustee institutes an action in Franklin Circuit Court to return control of the assets to Bullitt Utilities or liquidates the assets as provided by law, pursuant to KRS 278.021(7). This argument is specious. This Court is unpersuaded that title to the Debtor's assets can be transferred and re-transferred so casually.[3]

The Trustee relies on the PSC's Staff Opinion 2015-011 in support of its claim that Bullitt Utilities did not lose legal title to its assets, but rather, once the Involuntary Petition was filed and the Trustee appointed herein, the Trustee has sole control over the Debtor's assets. Ironically,

---

[3]This argument is simply a restatement of the personal property common law maxim that "possession is nine-tenths of the law." It is however, not found in the Kentucky Revised Statutes relating to the PSC regulatory scheme.

BCSD requested this Advisory Opinion from the PSC shortly after it began accepting wastewater from the Hunters Hollow system pursuant to the Agreement between Debtor and BCSD. The PSC's Staff Opinion states in pertinent part, as follows:

> Commission Staff notes that pursuant to KRS 278.021, a receivership is an arrangement through which the Franklin Circuit Court places the assets of a utility under the sole control and responsibility of a receiver. **The receiver does not, however, become the owner of the assets or the owner of the utility.** Per 278.021(7), the receiver's control and responsibility over the assets terminates upon one of two events: (1) The Court orders the receiver to return control of the assets to the utility; or (2) The Court orders the receiver to liquidate the assets as provided by law. Therefore, under the first scenario, it is clear that, although control of the assets is vested with the receiver (subject to the Court's supervision) title to the property remains with the utility, which continues to exist during the receivership. Under the latter, second scenario, although control of the assets is vested with the receiver, if the Court determines that the assets should not or cannot be returned to the utility, the receiver liquidates the assets as provided by law. Commission Staff further notes that KRS 278.021(6) states that the receiver acts on behalf of the utility. **The foregoing observations support the proposition that a receiver controls the assets on behalf of the utility and does not become the owner of the assets or the owner of the utility by virtue of the receivership.** (Emphasis added).

This analysis by the PSC is persuasive in that it comports with the ordinary legal definition of a receiver as one who acts as a "custodian" of another's property.

It stands to reason as well that delegation by the legislature to the PSC, an arm of the executive branch, of the power and authority to transfer title to an operator's assets to a party in interest in the regulatory process, would necessitate clear and unambiguous statutory authority. In the absence of any other binding authority, the Court is persuaded by the PSC's Staff Opinion that legal title was not severed by appointment of the Receiver and BCSD acted as a caretaker of the assets until the Trustee was appointed in this bankruptcy.[4]

---

[4] It seems unnecessary to list the host of practical reasons why a receiver would not accept an appointment over property subject to an environmental crisis if the appointment constituted "automatic" transfer of legal title.

-9-

Estate property in a bankruptcy is defined in 11 U.S.C. § 541. As the statute notes, upon the commencement of a case, an estate is created. The estate is compromised of all property, wherever located and by whomever held and, except for instances enumerated in the statute, comprises "all legal or equitable interest of the debtor in property as of the commencement of the case." 11 U.S.C. § 541(a)(1). Upon the filing of the Involuntary Petition, the Trustee was charged with administering the estate. It is well established that the broad scope of 11 U.S.C. § 541 encompasses causes of action existing at the time of the commencement of the bankruptcy action. *Bauer v. Commerce Union Bank, Clarksville, Tennessee*, 859 F.2d 438, 441 (6th Cir. 1988). Causes of action which formerly belonged to a debtor vest in the trustee for the benefit of the bankruptcy estate when the debtor files in bankruptcy under Chapter 7 of the Bankruptcy Code. *Id.*; *Davis v. Ford Motor Co.*, 978 F.2d 1258 (6th Cir. 1992). This Court finds, as it set forth specifically in the Order appointing the Trustee, that the Trustee has the authority to investigate and pursue the surcharge claim.

BCSD and the Attorney General claim that the Trustee cannot pick and choose which assets he will administer and that if he pursues the surcharge claim, he will have to operate the utility. The facts before the Court as they appear now establish that BCSD is obligated to continue operating the wastewater treatment plant pursuant to the Agreement it entered into with Bullitt Utilities in November 2014. The Trustee's Reply makes clear that he is "in charge of all parts of the Debtor's bankruptcy estate." *See* Reply of Trustee, at p. 5. The Trustee is not "picking and choosing" which assets of the estate he will administer.

This Court is not opining on the merits of the surcharge claim, nor is that a matter for this Court to decide. The Trustee however, under the Bankruptcy Code, has the authority and standing to pursue the claim on behalf of the estate before the appropriate state commissions and courts.

-10-

BCSD also contends that the Trustee is impermissibly requesting an advisory opinion.  The Court disagrees.  A justiciable controversy exists regarding property of the estate, a matter squarely within this Court's jurisdiction.  The Trustee is not seeking an advisory opinion but rather requesting resolution of an actual controversy regarding turnover of estate property.

Finally, BCSD relies on 28 U.S.C. § 959(b), in support of its claim that the Court should not permit the Trustee to control the Surcharge Case, but leave BCSD with the burden of administering an "unprofitable sewer system."  The Trustee is not using this Court to circumvent compliance with state law.  BCSD entered into a written agreement with Debtor regarding its operation of the Hunter Hollow Wastewater Treatment Plant.  BCSD's obligation to continue its operation of the facility is a matter of contract rather than a mandate from this Court requiring its continued service.  Section 959 has no applicability to this situation.

## <u>CONCLUSION</u>

For all of the above reasons, the Motion of the Trustee, Robert W. Keats, for Clarification Requested by the PSC is **GRANTED**.  An Order incorporating the findings herein accompanies this Memorandum-Opinion.

**UNITED STATES BANKRUPTCY COURT**
**FOR THE**
**WESTERN DISTRICT OF KENTUCKY**

IN RE:                                    )
                                          )
    BULLITT UTILITIES, INC.          )        CASE NO.  15-34000(1)(7)
                                          )
                Debtor          )

## ORDER

Pursuant to the Memorandum-Opinion entered this date and incorporated herein by reference,

**IT IS HEREBY ORDERED, ADJUDGED AND DECREED** that the Motion of the Trustee, Robert W. Keats, for Clarification Requested by the PSC, be and hereby is, **GRANTED**.

**IT IS FURTHER ORDERED, ADJUDGED AND DECREED** that the Trustee is authorized to act for the Debtor Bullitt Utilities, Inc. in all legal proceedings.

**IT IS FURTHER ORDERED, ADJUDGED AND DECREED** that all of the Debtor's assets, including the Surcharge Claim, which was the subject of the April 14, 2016 Order of the Public Service Commission and PSC Case No. 2014-00255, are part of the Debtor's bankruptcy estate and are under the sole control and authority of the Trustee.

**IT IS FURTHER ORDERED, ADJUDGED AND DECREED** that the Trustee is authorized to re-file the Surcharge Claim for Bullitt Utilities, Inc.